Madam Clerk, please call the next case. 3-11, section 176, people of the state of Alabama, I am pleased to be here to address you in courtesy of Justice Elad Rasras, appellant by Maureen Williams. Ms. Williams, you may proceed. Thank you, Justice. May it please the Court, Counsel, my name is Maureen Williams and I represent Defendant Elad Rasras. This is a case that involves a set-up or commonly called a frame. My client was framed. I have 20 years of experience as a criminal defense attorney. I've never stated that my client was framed before. But this case has no one after the time he was framed did anything to protect my client. Not his two lawyers and not the trial court. There are a number of instances in this case where I said, oh my gosh, this record is incredible, I can't believe that happened. And I've counted 11 such instances or references. The first one is the fact that it was suspicious that my client wanted to buy 54 cans of formula. To me, I don't see anything suspicious about 54 cans of formula. My brief, as well as many typos that I'm embarrassed of, I got it wrong. My client is not from India, he's from Jordan. It might be suspicious for a person from Jordan who's dark-skinned to put 54 cans of formula in his cart. The second thing that really got my attention was the customer is responsible for ringing up the transaction properly. In this case, that really got my attention. I was like, I can't believe that we are making a customer at Walmart be responsible for the transaction being accurate. Even in the argument to prevent a directed finding, the state told the court, it is not her, the clerk's responsibility to check every time to count if she can rely on what he's telling her. That was page 42. It is absolutely her responsibility. And she should have verified if she can rely on what he's telling her. Apparently, she should have been verifying. If she was supposed to allow every item on the conveyor belt and then she allowed it to go through, which didn't show up on the tape, she should have verified. She claimed that she didn't see that there was an 18-can discrepancy. She didn't think that was anything to notice. The fact that she didn't verify is supported by the fact that she was told not to verify. This Matt Johnson, the safety person at Security Park, first he spotted my client, determined he was going to be guilty. It was suspicious he had 54 cans. He alerted the clerk, let this go through. In other words, let's catch him. At trial, the CSM, which is the customer service manager, testified. She was asked, even in this case where there was, quote, suspicion because of quantity and you had been placed on alert, there wasn't any reason to try to verify quantity? And she stated, I was told to let it go through. The only thing missing from that sentence was no, I can't verify. I was told to let it go through. The other thing that really, I can't believe this moment, was the fact that this tape was edited. My client repeatedly told his trial attorney and his post-trial attorney, the first one, that this tape was not right. He was there. He knew that this tape did not accurately depict what had occurred. His two lawyers ignored him, did not get the video tested. But the tape was stipulated to you. It was. I mean, doesn't that cause a problem for the appeal? Stipulated evidence. The reason it causes, I do agree that it causes a problem, but if you don't object, the court is obviously going to let it in, but the court did not have to use it as substantive evidence, as it did. But your reference, though, when you're saying that it causes, was your claim of ineffective assistance, correct? Is that correct? That's what it goes to. The fact that it was edited by the same security guards should raise a red flag, and Aronson, the court wrote, the failure to produce the authentic video brings up the general proposition that when evidence in one party's control is missing or destroyed, an inference may be drawn that the evidence was detrimental to that party. In effect, the true evidence was missing, and it was destroyed, because it was edited. And not only that, but my expert was able to, he was told by one of the supervisors, Melinda Anderson, on the first page of his report he wrote, Melinda admitted to me that the previous security investigator, Matt Johnson, did not preserve the files after he created the edited version of the situation involving Awad Ras Raz, therefore deleting them intentionally. This was put in a safe mode whenever it was pulled out of the line, and it should have remained in the safe line. It wasn't one of these where you automatically recycle it. It was just automatically put in the safe mode, and the only way it could have been deleted was intentionally, and that is what happened. That fact alone shows that this was a setup. This was a frame. Matt Johnson knew he wanted to get my guy. If he was so certain that my client was guilty, why would he need to edit the tape? And then he went and deleted it, because he knew if anyone saw the original, they could determine that it was in fact edited. The other thing that is incredible in the record is the fact that the trial attorney did not test the video. His client repeatedly told him, this is not an accurate depiction. The state attempts to argue that it was trial strategy, but I don't understand how it could be trial strategy. He used the tape to support their theory that there was no fraud involved. Isn't that correct? They used the video in the defense in this case. He did, and that also goes to ineffective assistance, because it wasn't the accurate depiction. It didn't show the whole scenario. It didn't show the clerk leaving her station two times. Even the transcript, the CSM and my client both testified, and they said, she left the station twice, it doesn't show up on the video, and that should have alerted the trial judge, there's something wrong with this video. That's from your client's testimony. But it was also from the customer service manager. She also said, Tammy Verwey, the clerk, went back and forth, and it doesn't seem to show up on the video. So she also testified to that. And if my client is repeatedly telling his trial attorney, this video is not right, it's not right, and he not only does not get the video tested by an expert, but he didn't object. He didn't even attempt to allow the state to come up with a foundation. Granted, it's not the most difficult thing in the world to get a video admitted into evidence, especially when you have a willing judge, but he should have objected, especially when his client repeatedly told him there was something wrong with it. The fact that there was a finding of guilt, given that there were two references, minimum, that the events did not show up on the tape, there was confusion, that was obvious. It could either be an intent to steal, or there could be confusion. So if my client is saying, if there are two transactions left to ring up, and he's saying 18 and 18, and the clerk rings up 9 and 9, that's confusion. And if there's confusion, it's reasonable doubt. The fact that the tape was edited and deleted, if that would have come to the attention of the trial court, maybe he would have said, okay, we have that, we have an edited tape, a deleted tape, a person who is suspicious because he's dark, and we're telling the clerks, let this go through, let this go through. Don't verify anything. You put that all together, and you have a security guard who wants my client to be found guilty. The fact that the post-trial attorney put in his motion for new trial repeatedly, this video was not correct, it wasn't complete, it was edited, and then he goes to court, and the judge outright asks him, well, are you saying that this video was edited? And he says no. And my client had to have been sitting there saying, are you kidding me? I just kept telling you this video was edited. Then the next breath, the attorney, his post-trial attorney says, well, actually, I didn't even look at the video. I mean, this was the smoking gun in the case, and his post-trial attorney did not raise it. And then finally, the fact that the judge didn't order the new trial, once it was brought to light that this tape was edited and then deliberately erased by the same clerk who determined that my client was suspicious, he ignored the confusion, he ignored the fact that it isn't suspicious to buy a 54-cans formula. It isn't suspicious, or it isn't right to tell a clerk not to verify. Just going back, this part where the clerk was told not to verify, to me that's akin to, if a prospective client came to my office and said, I'm going to hire you, I'd say, $500. He gives me an envelope, and I don't open it. And then when he leaves, I open it, and there's only $400 there. I go down to the police station, I want to file a report. The first thing they would ask is, why don't you count it in front of them? It's not the duty of my client to bring up this transaction correctly. Finally, because of all these gotcha moments and the fact that his attorneys did nothing to bring to light the fact that he was set up, it supports our claim that there was insufficient evidence. If you put it all together, the confusion, the profiling, the bias, the inexperienced clerk, the two references where the witnesses said, this happened, but it wasn't on the tape, the fact that the trial judge used this video as substantive evidence, all supports the conclusion that there just wasn't enough evidence sufficient to convict. The assistance of counsel was ineffective. The performance was absolutely deficient. Neither one of them took the actions to get the fact of the edited video in front of the court. The post-trial attorney did not prejudice the defendant because I was able to step in and bring to light this edited video. But the first attorney, if he would have been able to show the court that this video stunk to high heaven, maybe the court could have put it all together and said, we do have bias here. And finally, the court erred in not granting a new trial or a reversal given the fact that the report and the testimony from Mr. Premo supports tampering and concludes that there was tampering in the erasure of the tape. If there are no further questions, I will sit down. I don't believe there are. Thank you, counsel. Thank you. Mr. Nicolosi, you may respond. Good morning, your honors. May it please the court, counsel. First off, regarding the video that was introduced to trial, again, as your honors mentioned, there was no objection by defense counsel. And counsel argues plain error in her brief. And of course, the first step of any plain error analysis is whether there was any error at all here. The fact that there was no objection indicates that there was no error at all. If there's no objection to evidence, it can be considered by the trier of fact as evidence. And a failure to reject forfeits the lack of foundation argument on appeal. And if a client repeatedly tells his attorney there's something wrong with this tape, I don't think that it accurately depicts what happened and they don't object, do you think that that is a reasonable trial strategy? Well, your honor, the thing is, even if, as counsel noted, if trial counsel would have objected, the people... It's not difficult to put forth a Walmart security employee to lay the foundation for this. And the people are confident that that would have happened in this case. Regardless, people mentioned in their brief that on appeal, the appellate forum really isn't the right forum for a discussion of this topic, that this is the kind of matter that a post-conviction petition would better flush out because at that point you can get affidavits from attorneys and from Walmart personnel regarding the handling of this tape. The people, again, refer to their brief on that matter. Well, regarding, I guess, further regarding the effective assistance of counsel, again, there was still no proof in this case whatsoever that this tape was edited. Even the expert, the defense hired and presented, he waffled on what happened with this tape. He at first said it's not... He concluded that the tape shown at trial wasn't the complete tape. But then again, on cross-examination, he said there's no evidence that there was any malicious editing. He said there was no evidence. Clearly, the original wasn't there, but that's not... But that's not the same as saying that there's no evidence that there was no editing. He just said he couldn't establish that it was malicious in nature. I don't believe he conclusively stated that it was edited either. I mean, he, of course, couldn't see the original because it wasn't there. So I don't understand even what value his testimony had at the hearing on the motion. Again, we're taking the defendant's word for it that this was edited. And, you know, the fact is that the only tape that existed was the one that was presented, and there was no proof whatsoever that this tape was edited. And how could counsel be ineffective for failing to present something that didn't exist, I guess, is basically a quicker version of my argument. And the people noticed multiple times in different issues in the brief the fact that there was no prejudice. Because even, let's say, hypothetically, that this original tape did exist, the people believed that no version of this tape would have any effect on the elements of this case because the crux of this case was the verbal exchange between the defendant and the cashier. The cashier testified that its Walmart procedure and the CSM, the customer service manager, testified this is a Walmart procedure is to have the cashier scan one of the items to enter and the quantity, and they take the customer's word for it. In this case, the cashier asked for the quantity, the defendant provided the quantity, and even though this was the cashier's second day, she knew enough to verify the quantity with the defendant. She testified that the defendant had an accent, and so she wanted to make sure that she got the correct number, so she basically repeated the numbers that the defendant gave her and asked for a confirmation or a correction from the defendant if they were correct or incorrect. How is that called verifying? What are you actually verifying? That the defendant has given you the proper numbers. She didn't check it in the cart. That's not verification. You're just asking to repeat. Verification would be to look in the cart and count. Oh, sure, Your Honor, but I think the issue here is that did the defendant try to get away with something? And if he told her that the incorrect number of 53 or 54 when he really had 72 in his cart, and she said, oh, so the number is 54, and the defendant says yes, it certainly appears that the defendant is trying to get away with not that. Maybe Walmart didn't do everything that they could have to count these cans, but again, the defendant has some, he knows how many cans are in his cart, and if he tells her the wrong number, which clearly he did because she entered, regardless if it was her second date, it's not going to affect her ability to punch in the correct quantity that the defendant tells her. So he's being watched because of some profile, right? I won't agree to that, Your Honor. Okay, so he's being watched. Yes. And the asset protection person, whatever that formal name is, okay, the floor walker, okay, knows that there's a difference in the quantity between the cash register slip and in the cart? He doesn't know that. While he's watching, he just knows that there's a lot of cans in his cart, and he knows that only a handful of them are put on the cart. He doesn't realize there's a discrepancy until later. Does he know that the defendant knows how many he has? No. Does anybody? I guess we're assuming that every time you put something into a cart, you know how many items you have. Well, Your Honor, it was mentioned in, I believe, the defendant's brief that he's a math professor. It doesn't seem to me that there was a debate on how many were in his cart. I'm a judge, but I don't always know how many. I've slugged a lot of baby formula onto the conveyor belt at stores, and I couldn't tell you how many were out. I understand, but Your Honor, the defendant, this was a pretty calculated transaction. He separated into three transactions knowing that to get that price match or the competitor's price, whatever that was, he couldn't exceed a limit for each transaction. So there's really no question. He thought about this before he did it. He knew that I can't exceed, I believe the number was 24. He couldn't exceed 24, so he had three batches of 24. It seems pretty clear that he knew exactly how many were in his cart. And I think it was also... Let me understand this. You can only get a discount if you have 24? Your Honor, I don't believe that was in the record. I'm just trying to understand what I think happened. Yeah, I'm just trying to figure the business sense of all of this. Okay? Okay. So there's 72 in total. I believe that was the name. It's being sold, but we're only going to give you a price difference if we bring up three transactions of 24, right? As I understand the record in this case, yes. That's my best conclusion on it. I understand what you're saying. Okay. I'm just asking. And I also believe, Your Honor, that it's telling that when he was stopped by Matthew Johnson, the loss prevention employee, he immediately said, and this was in the defendant's brief, he immediately said that in response to the discrepancy that the cashier made a mistake. So he knew right when he was stopped that there was a discrepancy or else why would he immediately say, oh, the cashier made a mistake. If he was innocent, he wouldn't even know there was a mistake until the loss prevention gentleman... So this is kind of like the transaction where you're getting changed for five and they give you back more change than you're allowed legally. Okay. And you don't say anything. Well, Your Honor, with that, if you don't know that you got more change, that would be an innocent mistake. But the people's position, and again, they presented sufficient evidence below that the defendant did know what was going on and that Cami Verwey, the cashier, entered the numbers correctly. And again, the defendant's second issue is sufficiency in the evidence and the people submit that there was evidence for a rational jury to conclude... It was a bench draw. It was a bench draw for the trier of facts to conclude. So this case really comes down to the cashier says, he told me 10 cans, I rang up 10 cans, and the floor walker finds that there's 12 cans. More or less, yes, Your Honor. And that's part of the reason why the people submit, and I reiterate several times in my brief, that the video issues in this case are insignificant because there wasn't any audio on the trial version. And if there was, hypothetically, a version that was edited or something, there was no audio on that one either. And so what the defendant and the cashier talked about wouldn't be on the videos. What good are the videos if they don't get to the crux of this case? And that's the issue. Well, can't the video show, though it's silent, which is making it come back into movie theaters. Yes. Can't one see confusion on the part of the cashier? Well, Your Honor, I believe the testimony actually kind of established that she didn't exactly know what to do with the price matching or the competitor's price. And there was testimony by her, by Elizabeth Gibson, and by the defendant that she got help. Burway testified that she went to the cashier behind her to get help with this. There's really no question about that. And also the video would have established, or did establish, because it was shown at trial, that all the cans weren't put up on the conveyor belt. That's not a debate. The people just... But was she told to take his work? She was told to let it go through, right? So we're talking about a third, 18 more cans. How is it that she can reasonably take the word for something that negates one third of the whole product?   take the word for something that negates How is that reasonable on her end? Well, Your Honor, number one, there was a lot of cans in these carts. If I know correctly, these cans aren't small. They're large cans. So there's a big quantity there. And regardless, she testified and Elizabeth Gibson testified that this is the practice at Walmart. This is what they take the customer's word for and if the customer lies to them, which the people submit happens in this case, then that's a risk that they take. Again, but regardless, Your Honor... What's the risk they take? That they lose the cans? That they lose the sale? No, no, that they could be stopped, as the defendant was in this case. And there's the receipt check. Oh, the risk they take, you mean the customer? Yes, Your Honor. Anyway, Your Honor, you just have to stress the... So the only defense the customer has is the defense that I miscounted, right? Well, Your Honor, but again, the evidence shown supports the fact that the defendant didn't miscount. Again, this was a calculated decision. He had three separate transactions with all of the cans of formula. He knew what he was doing. That was what the people argued below. And the trial judge found... So the argument is that because these are three separate transactions to get a price break, that you would be more careful in counting to make sure you've got the right number of cans to get the price break. Yes, or else, Your Honor, what would be the point of splitting them into three transactions? If you could just dump them all in a cart... Your argument, Your Honor, you don't know sometimes how many items you put in a cart. If he could have just thrown all 72 into a cart, then I could maybe understand the argument that he didn't know how many he had. But the fact is, he separated them into three transactions, and knowing what he was doing... It goes to the element that there's greater knowledge in this type of transaction than there would be in just a large quantity of transactions of an ordinary nature. Yes, absolutely. I believe that's all the pertinent info I have. I have a question. Who said, let it go through? I believe Matthew Johnson, the loss prevention gentleman, told Elizabeth Gibson, the customer service manager, to inform the cashier to let it through. Why was he doing that? I don't know, Your Honor. Was he counting the cans? No, I don't believe so. Maybe counsel has a better recollection of that. I don't believe he was counting the cans. I'm not entirely sure he could see all the cans. He just knew that he had a lot. But regardless, Your Honor, I don't believe that's a... The same one who apprehended the defendant? Yes, the first gentleman. The one who said, let it go. Yes, I believe so, unless I'm confused. I believe that was the right gentleman. I'm trying to look through this again to try to refresh my recollection. Did he start unloading cans on the conveyor belt and then is told, tell me how many you have? Yes. I believe the cashier was informed that when there are large quantities of items not to have the customer put them up there. So I think he started putting them up there. I'm assuming she said, I don't believe this was clear in the testimony. I'll enter the quantities so you don't have to... I'm paraphrasing, I'm sure. Is this Wal-Mart policy? From what I understand, yes. There was testimony that that was Wal-Mart policy. So the judge's finding is based on that this is a policy that's probably known by the defendant? Yes. That's an excellent point, Your Honor, because the defendant testified that he does this often. He does this to buy quantities at lower prices and then resell them. So the defendant likely knew going to this Wal-Mart, hey, Wal-Mart, they don't make you put the cans up there. So I can just put a few cans up there, say an incorrect number, and maybe... Clearly, I'm sure he's never been stopped before, like Matthew Johnson stopped him on his way out for the receipt check, but I think he knew the policy and tried to get away with it. The only thing you would know is whether he's been prosecuted. Yes, I know. Apparently, it's the key one of Wal-Mart's policy, maybe, to fault charges. How can... But if you don't know how many you have, how can you do what they tell you to do? Well, Your Honor, the people's position is that he didn't know. And that's what we presented below. And the trial judge believed the people presented sufficient evidence. That's what we have to go with here, Your Honor. And there's really... The people submit that based on the calculated nature of these transactions, the defendant absolutely did know. Cammie Verway testified that she clearly put... She entered the numbers that the defendant told her. And that's the evidence we have. What's funny about this case is there's relatively scant evidence here, but what we have is very strong. It's not quantity, but it's the quality of evidence that we have. Now, opposing counsel is suggesting there's an entrapment or setup. I mean, is there a problem with a loss prevention person who is acting on a hunch to let the transaction go through? Your Honor, I don't really want to speak on that. I believe that that's kind of irrelevant to this issue. I guess I kind of equated it when I was doing this brief to assuming there was something to counsel's allegations to the pretext of a traffic stop or something where maybe there's a suspicious vehicle, but as long as the suspicious vehicle is going one mile over the speed limit and an officer effectuates a traffic stop, there's nothing wrong with a stop, regardless of the motives of the officer making the stop. In this case, the... Well, you're saying there's no difference than seeing on a videotape that somebody's slipping an item into their pocket, goes through the cash register system, and walks out, and then they're stopped? Sure. Yes, Your Honor. Because there's nothing stopping... The defendant clearly didn't try to hide any of these cans. I mean, the cans were in plain sight. They were in the carts. All he had to do was tell her the correct number, and then let's say Matthew... I don't think you want to say that. You're saying clearly the defendant wasn't trying to hide something? That's heading to my second point. If he had all the cans in his cart and he told the cashier the correct number, let's say Matthew Johnson decided to stop this defendant for whatever reason, whatever his motives are, and he has the receipt, and he checks the receipt, and there's the right number of cans, Matthew Johnson says, have a nice day, sir. But the defendant didn't do that. He didn't tell Camille Verwey the correct number of cans that he knew were in his cart. Is it the number of cans that creates the weight of the sevens, do you think? I mean, if it was one or two, would he... No, that's irrelevant, Your Honor. The fact is, it didn't matter what the number was in his cart. What matters is that the number he gave Camille Verwey was different than the number in his cart. And that's only based on testimony of each person? Yes, Your Honor. I don't know what other evidence we have to establish anything else on this matter. The evidence was sufficient below when the people submit that... Well, you don't... I mean, the judge has to weigh the credibility, right? Absolutely. Do you think the discrepancy number would have a factor in weighing that credibility? Well, Your Honor, the trial judge heard Camille Verwey testify that she put these numbers in correctly, as the defendant told her, and that it was all flushed out. It was her second day at this job, but again, it was pretty clear that... The trial judge found the defendant not credible, is that correct? Yes, Your Honor, because the defendant, he told Camille Verwey that he split this into three transactions because he was buying for three different families, but then when he stopped by Matthew Johnson, he tells Matthew Johnson that, oh, I'm planning to resell this. That went a long way to spoiling the credibility of the defendant in the trial judge's eyes. And the people submit that the evidence... Is there not another interpretation possible? I'm going to resell it to three families? That's not what he told Camille Verwey. Your Honor, the trial judge believed Camille Verwey. She was entitled to believe Camille Verwey, and the evidence we believe supports the people's position and the testimony supports the people's... Okay, believe her as to what? That she entered the numbers in correctly, that defendant provided her. Okay, but you're trying to say there's other things that call into question the defendant's credibility, other than I told her this number and... That's the main issue with defendants' credibility. I'm just asking whether those two statements are inconsistent. I'm buying them to resell and I'm separating them out for three families. Your Honor, the people would wonder why he would give two different reasons when asked for why he had, you know, He didn't say I was going to give them to three different families. I understand, Your Honor. But the fact is that the trial judge found the defendant not credible and Camille Verwey and the Walmart... What's their standard of review? Whether any rational prior fact would find that the evidence was sufficient to prove guilt. The trial judge was not rational in believing Camille Verwey when she testified that the defendant gave her the wrong information. Are there any other questions? I don't believe there are. Thank you, counsel. Ms. Williams, you may reply. I believe that, listening to counsel, I believe that this all comes down to a rational prior fact. And that's where I get hung up. You say, absolutely, it was deficient of both attorneys to not get this video tested. But was it prejudicial to my client? And you say, yes, if you put it in front of a rational prior fact, it would have been prejudicial. Because if a rational prior fact would have heard, oh, not only did the security guard set him up, profile him, edit the video, and then delete it so no one could ever catch him, once they found out all this and it was brought to light, I don't think a 12-person jury could ever convict my client. What about a one-person judge? That's what I'm saying, Your Honor. Because this was a bench trial in front of an irrational prior fact, he was not shocked. This trial court was not shocked by the fact that this video was edited and that it was deliberately deleted. And so that's where you can't show prejudice because the trial court did the same thing before and after he found out that this tape was edited. And so I'm saying that if this was put in front of a rational prior fact, there is not sufficient evidence. I wanted to just go through a couple points. When my client said the cashier made a mistake, that was his first reaction to me that is plain as day that he knew that he did nothing wrong. As far as Walmart policy, I don't believe it is to just take the person's word for it. It's to verify, or actually to put every item on the line. And yes, Your Honor, my client wanted to separate into three transactions in order to do price matching. And he did have three families to resell to. And I don't understand why that was a big hang up. And finally, if my client said to the clerk after the first transaction was completed and he had two other families to take care of and he said, she asked how many do you have and he said 18 and 18, and she hears 18 and rings it up to 9 and 9, okay, so it's her fault. But yet, my client has to bear the brunt of this. Because there is confusion. And I submit that the fact that there is confusion and all this, just the fact that the witnesses testified, well, this happened and it wasn't on the tape or if I was a rational trier of fact would hear it's suspicious to get 54 cans of formula? Put all that together and it's not there's no basis for a conviction. It's insufficient evidence because if there is confusion, that's reasonable doubt. Thank you. Thank you, counsel. Thank you, counsel, both for your arguments in this matter this morning. It will be taken under advisement and written disposition.